IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff*, | Criminal No. 2:14-cr-39 |
| v. | Hon. William S. Stickman IV |
| JOSEPH SABOT, | |
| *Defendant.* | |

## MEMORANDUM ORDER OF COURT

WILLIAM S. STICKMAN IV, District Judge

Defendant Joseph Sabot ("Sabot") has filed a Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) claiming that a reduction in his sentence is warranted due to: the fact that he has served over 50 percent of his sentence and "has had overall clear conduct;" his susceptibility to COVID-19 due to his underlying medical conditions (*i.e.*, asthma, psoriatic plaque psoriasis, obesity, kidney stones, post-traumatic stress disorder, and attention deficit hyperactivity disorder) and the possibility of serious illness and/or death; and, how FCC Petersburg is handling the pandemic. (ECF No. 73, pp. 3-6). He is seeking compassionate release for "extraordinary and compelling reasons" pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i). The Government filed a Response contending that Sabot does not meet the statute's requirements for a reduction in sentence. (ECF No. 74). Sabot filed a Reply reemphasizing his medical conditions and arguing that he is has measures in place, if released, to mitigate the danger he poses to society. (ECF No. 75). He also filed a Letter pleading for his release. (ECF No. 76).

1

This matter is fully briefed and ripe for disposition by the Court. After careful consideration of the parties' pleadings and arguments, as well as review of the entire record, the Court denies Sabot's motion for the following reasons.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On February 21, 2014, Sabot pled guilty before the Honorable Maurice B. Cohill pursuant to a plea agreement to Count Three of the Indictment, which was Travel with Intent to Engage in Illicit Sexual Conduct with a Minor, in violation of 18 U.S.C. § 2423(b). (ECF Nos. 1 and 56). Sabot also acknowledged responsibility for a second count of Travel With Intent to Engage in Illicit Sexual Conduct with a Minor, as well as two counts of Interstate Transportation of a Minor for the Purpose of Engaging in Unlawful Sexual Activity. The parties agreed to a stipulated sentence of 12 years' incarceration and 20 years' supervised release pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). (ECF No. 68) (6/10/06 Sentencing Transcript, p. 3). Notably, Sabot was classified as a repeat and dangerous sex offender, which equated to a criminal history category of V, and his offense level was calculated as 31. (ECF No. 61) (6/10/06 Sentencing Transcript, p. 2). As to Count Three, the advisory guideline range of imprisonment was 168 to 210 months. (ECF No. 61) (6/10/06 Sentencing Transcript, p. 3). Thus, the negotiated sentence between the parties at Count Three was below the guideline range.

On June 30, 2016, Judge Cohill accepted the stipulated sentence and imposed 144 months' imprisonment followed by 20 years' of supervised release upon Sabot. (ECF No. 69) (6/10/06 Sentencing Transcript, pp. 18-25). Judge Cohill granted the Government's motion to dismiss Counts One, Two, and Four of the Indictment. (ECF No. 69). Sabot has been incarcerated since 2014, and his projected release date is March 27, 2025. (ECF No. 73-3). He

has apparently had two minor disciplinary actions while incarcerated. (ECF No. 73, p. 7). Currently, Sabot is incarcerated at Petersburgh Medium FCI ("FCC Petersburg").

## II. STANDARD OF REVIEW

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007); see also *Dillon v. United States*, 560 U.S. 817, 819 (2010) ("A federal court generally may not modify a term of imprisonment once it has been imposed."). One such specific authorization is the First Step Act's amendment of 18 U.S.C. § 3582, which provides under subsection (c)(1)(A)(i) that a court may modify a defendant's term of imprisonment if "extraordinary and compelling reasons warrant such a reduction:"

> (c) Modification of an imposed term of imprisonment.--The court may not modify a term of imprisonment once it has been imposed except that--
> (1) in any case--
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that --
> (i) extraordinary and compelling reasons warrant such a reduction....

18 U.S.C. § 3582(c)(1)(A)(i). As noted, before a defendant makes such a request, he must ask the Bureau of Prisons (BOP) to do so on his behalf and give the BOP thirty days to respond.[1] 18 U.S.C. § 3582(c)(1)(A). If a defendant has exhausted his administrative remedies, a court must next consider the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, then

---

[1] To fully exhaust administrative remedies under the first method, a defendant must comply with the requirements of the administrative appeals process set forth in 28 C.F.R. §§ 542.15(a) and 571.63.

3

the Court must determine whether a sentence reduction is consistent with the applicable policy statements issued by the Sentencing Commission.

The phrase "extraordinary and compelling reasons" is not defined by the statute, but instead incorporates the commentary to the policy statement contained in § 1B1.13 of the United States Sentencing Guidelines. *See United States v. Handerhan*, 789 F. App'x 924, 925 (3d Cir. 2019) (citing *United States v. Barberena*, 694 F.3d 514, 521 n.10 (3d Cir. 2012)). Section 1B1.13 of the Sentencing Guidelines explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines:

> [A]fter considering the factors set forth in 18 U.S.C. § 3553(a), that—
>
> (1)   (A) extraordinary and compelling reasons warrant the reduction;
>
> (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. Application Note 1 to § 1B1.13 provides four categories of reasons that qualify as extraordinary and compelling: (1) the defendant's medical condition; (2) the defendant's age; (3) the defendant's family circumstances; or (4) "other reasons" to be determined by the Director of the BOP. As a result of amendments to § 3582(c)(1)(A) through the First Step Act, many courts now conclude that the catch-all category of "other reasons" applies not only to the BOP Director, but also to courts.

District courts that have examined compassionate release requests in light of the COVID-19 pandemic consider: (1) whether "extraordinary and compelling" reasons exist to reduce the

defendant's sentence; (2) whether the defendant is a danger to the community under § 3142(g); and (3) whether the § 3553(a) sentencing factors support a sentence reduction. To establish "extraordinary and compelling reasons," courts have generally required defendants to show two things: (1) advanced age or a serious medical condition that places them at a high risk of serious complications or death if infected with COVID-19; and (2) a more than mere speculative risk of exposure to the virus at the prison where the inmate is housed. *United States v. Somerville*, —— F. Supp. 3d ——, No. 12-225, 2020 WL 2781585, at *8 (W.D. Pa. May 29, 2020) (citing cases).

### III. ANALYSIS

#### A. EXHAUSTION

Sabot filed a request for compassionate release with the Warden of FCC Petersburg on May 26, 2020, and it was denied on June 7, 2020. (ECF No. 73-4). He then submitted a BP-11 form to the BOP's General Counsel's Office as an appeal on July 22, 2020. (ECF No. 73, pp. 10-11). Having received no response within thirty days, Sabot filed his Motion for Compassionate Release with the Court. (ECF No. 73, p. 11). The Government concedes that Sabot "properly pursued and exhausted his administrative remedies," and the matter is properly before the Court for resolution. (ECF No. 74, pp. 5-6). The Court agrees. 18 U.S.C. § 3582(c)(1)(A) has been met. Sabot's motion is properly before the Court.

#### B. EXTRAORDINARY AND COMPELLING REASONS

Next, the Court must determine whether Sabot's medical conditions, whether in isolation or in combination with the COVID-19 pandemic and the conditions at FCC Petersburg, are "extraordinary and compelling" reasons that warrant his release under § 3582(c)(1)(A)(i).

Centers for Disease Control and Prevention ("CDC") recognizes that the following underlying medical conditions place individuals at a greater risk of severe illness from COVID-

19: cancer, chronic kidney disease; chronic obstructive pulmonary disease; an immunosuppressed state as a result of an organ transplant; obesity (body mass index "BMI" of 30 or higher); serious heart conditions; sickle cell disease; and type II diabetes. *See People of Any Age with Underlying Medical Conditions, Centers for Disease Control and Prevention*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Sabot contends that he presents with one of these high risk factors: obesity. The Government accurately notes that no reliable documentation or medical records has been provided that Sabot has actually been diagnosed as obese. As Sabot is proceeding *pro se*, the Court will accept his averment that he is obese.

The CDC also states that, based on limited available data, individuals with "the following conditions might be at an increased risk for severe illness from COVID-19": asthma; cerebrovascular disease; cystic fibrosis; hypertension; an immunocompromised state; neurologic conditions; liver disease; pregnancy; pulmonary fibrosis; smoking; thalassemia; and type 1 diabetes. *See People of Any Age with Underlying Medical Conditions, Centers for Disease Control and Prevention*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Sabot contends that he presents with one of these conditions: asthma. Additionally, he believes his psoriatic plaque psoriasis constitutes an immunocompromised state. The Government accurately notes that no reliable documentation or medical records has been provided that Sabot has actually been diagnosed with these conditions. Nevertheless, for purposes of resolution of this motion and because Sabot is proceeding *pro se*, the Court will accept his averments that he suffers from asthma and psoriatic plaque psoriasis.

The Court's review of medical records that Sabot has provided (ECF No. 75-1) reveals that the BOP has more than adequately treated any medical issues that have arisen during his

incarceration. None of the records state that Sabot has been diagnosed with asthma and psoriatic plaque psoriasis or classified as obese and, no treatment and/or medication plan is included in the records. Consequently, there is no evidence that Sabot's medical needs are not being addressed at the FCI Petersburg Medium; in fact, he is seemingly receiving appropriate medical care.

Even if Sabot's particular combination of medical conditions (obesity, asthma, and psoriatic plaque psoriasis), taken together, place him at risk of contracting COVID-19, the Court holds that relief is not warranted. Sabot, who is 32-years-old, has not demonstrated a more than speculative risk of exposure at FCC Petersburg and becoming seriously ill. The Court acknowledges that, as of this date, FCI Petersburg Medium has 42 confirmed active cases among inmates and 2 active cases among staff members and that 118 inmates and 4 staff members have recovered. *www.bop.gov/coronavirus.* The mere presence of COVID-19 at FCI Petersburg Medium does not automatically entitle inmates with medical conditions to compassionate relief. The Court does not intend to minimize Sabot's concerns for his health and safety, but his fear and anxiety over contracting COVID-19 is speculative. Sabot has not provided the Court with any evidence that FCI Petersburg Medium does not have in place appropriate protocols and adequate medical care to handle the COVID-19 virus. The Court is of the opinion that the BOP has taken the necessary steps and precautions to help stop the spread of the COVID-19 virus.

Sabot has simply not demonstrated that his circumstances – the combination of his medical conditions and the conditions at FCI Petersburg Medium - are so extraordinary and compelling that the Court should grant him relief under 18 U.S.C. § 3582(c)(1)(A)(i). The Court holds that Sabot is not entitled to compassionate release on this basis.

C. DANGER TO THE COMMUNITY AND SENTENCING FACTORS UNDER § 3552

Even if Sabot was able to demonstrate extraordinary and compelling reasons for his early release, the Court would still deny his motion. Sabot is a danger to the community under § 3142(g), and the § 3553 sentencing factors do not support a sentence reduction.

In determining whether a defendant presents a danger to the community, courts consider the factors set forth in § 3142(g), which include the nature and circumstances of the crime charged, the defendant's history and characteristics, and the nature and seriousness of the danger to any person or community that would be posed by the defendant's release. 18 U.S.C. § 3142(g)(1), (3), (4). These factors weigh heavily against Sabot's release.

As to the nature and circumstances of the crime, Sabot met the 15-year-old female juvenile victim in 2010 (when he was age 22), via an online dating website. He resided in Washington, Pennsylvania with his parents and the victim resided in Wheeling, West Virginia. Shortly after meeting, they began a sexual relationship with the sexual encounters usually taking place in Pennsylvania. Sabot typically drove to the victim's residence in West Virginia, picked her up, and then drove her back to his residence in Pennsylvania. (ECF No. 61). This is a very serious offense.

As to Sabot's history and characteristics, he has an ongoing history of perpetrating sexual offenses against minors. Prior to the instant assault, he assaulted a minimum of five children. (6/10/06 Sentencing Transcript, p. 16). The Court recognizes the difficulty Sabot faced in the first six years of his life and that he was victimized as set forth in the Presentence Investigation Report (ECF No. 61), his Memorandum in Aid of Sentencing (ECF No. 68), and his adoptive parents testimony at his sentencing hearing (6/10/06 Sentencing Transcript, pp. 4-13). At sentencing, Judge Cohill noted that Sabot had "a family background of abuse and neglect that is

heartbreaking," and he recognized that Sabot had made psychiatric progress but it was "way behind on this kind of situation." (6/10/06 Sentencing Transcript, pp. 13, 26). The instant conviction represents Sabot's fourth adult criminal conviction, all for serious sexual offenses against minors. At sentencing, Sabot was classified as a repeat and dangerous sex offender, which equated to a criminal history category of V, and the advisory guideline range of imprisonment was 168 to 210 months. He received significant leniency by accepting a negotiated 11(c)(1)(C) plea that included a sentence of 144 months imprisonment. The remaining amount of prison time Sabot has left to serve on his sentence is not insignificant – he is due to be released in March of 2025.

It is the Court's position that compassionate release is not appropriate given Sabot's criminal history and his involvement in repeated sexual offenses against minors. His criminal history reveals a tendency toward recidivism and disregard for the law. The Court commends Sabot's efforts toward rehabilitation while incarcerated, but it cannot ignore the nature of his crimes and his extensive criminal history as well as the sentencing leniency he initially received by entering into an 11(c)(1)(C) plea. Sabot was living with his adoptive parents when he committed the instant offense and he also committed the offense while he was on state probation (and receiving counseling and treatment) for another serious sexual offense. Judge Cohill specifically stated of Sabot at sentencing, "he's got a history of abusing children and as such, we have to be concerned about his danger to the community." (6/10/06 Sentencing Transcript, p.26). At this juncture, the Court is steadfast in its belief that Sabot's history demonstrates that he continues to pose a danger to the community.

The Court's consideration of the § 3553(a) factors further confirms its conclusion that granting Sabot compassionate release is not appropriate.[2] Sabot's sentence of 144 months' imprisonment reflects the serious nature of his crime and the fact that he was a repeat and dangerous sex offender. The Court cannot overemphasize the seriousness of Sabot's crime. The sentence he received serves to deter other sexual offenders who might consider engaging in criminal conduct against minors. At sentencing, Judge Cohill noted that he had a duty not only to attempt to rehabilitate Sabot but to protect the public from Sabot's actions. (6/10/06 Sentencing Transcript, p. 13). Sabot has not adequately demonstrated to the Court that granting him release now – years early – would promote respect of the law and adequate deterrence. His strides at rehabilitation while in prison do not outweigh the aforementioned § 3553(a) factors. Granting Sabot compassionate release at this stage would not reflect the seriousness of his crimes, promote respect for the law, provide just punishment, afford adequate deterrence from future crimes by him, nor would it prevent sentencing disparities.

---

[2] The sentencing factors courts consider are:
    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
    (2) the need for the sentence imposed—
        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
        (B) to afford adequate deterrence to criminal conduct;
        (C) to protect the public from further crimes of the defendant; and
        (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
    (3) the kinds of sentences available;
    (4) the kinds of sentence and the sentencing range established for—
        (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
18 U.S.C. § 3553(a).

The Court holds that even if Sabot's conditions arose to the "extraordinary and compelling" level, release or a reduction in his sentence would undermine § 3142(g) and the § 3553(a) factors.

## IV. CONCLUSION

AND NOW, this 26th day of October 2020, IT IS HEREBY ORDERED that Defendant's Motion for Compassionate Release (ECF No. 73) is DENIED without prejudice.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE